THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GARY WEST,

    *Plaintiff,*

vs.                                    Case No.:

CITY OF LAKELAND, DAVID GILL,
JAN ROYER, LONIE BECK, and
LABERTA VOPLE,

    *Defendants.*

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, GARY WEST, by and through his undersigned attorneys, hereby brings this civil action against Defendants CITY OF LAKELAND, DAVID GILL, JAN ROYER, LONIE BECK, and LABERTA VOPLE, and in support states as follows:

### INTRODUCTION

1. To secure legal, monetary, declaratory, equitable, injunctive, and punitive relief, West brings Count I against each Defendant for declaratory relief; Counts II and III against the City of Lakeland for violating the First Amendment of the United States Constitution; Counts IV through IX are state law claims of defamation, intentional infliction of emotional distress against Defendant Gill, along with aiding and abetting against Defendants Jan Royer, Lonie Beck, and Laberta Vople.

### PARTIES

2. Plaintiff GARY WEST ("Plaintiff" or "West"), resides in Polk County, Florida,



is over the age of eighteen, and is otherwise sui juris.

3. Defendant, the CITY OF LAKELAND, is a municipal corporation organized and existing under the laws of the State of Florida, with the capacity to sue and be sued.

4. Defendant DAVID GILL ("Defendant" or "Gill") residing and domiciled in Polk County, Florida, is over the age of eighteen, and is otherwise sui juris.

5. Defendant JAN ROYER ("Defendant" or "Royer") residing and domiciled in Polk County, Florida, is over the age of eighteen, and is otherwise sui juris.

6. Defendant LONIE BECK ("Defendant" or "Beck") residing and domiciled in Polk County, Florida, is over the age of eighteen, and is otherwise sui juris.

7. Defendant LABERTA VOPLE ("Defendant" or "Vople") residing and domiciled in Polk County, Florida, is over the age of eighteen, and is otherwise sui juris.

## JURISDICTION AND VENUE

8. Venue is proper in this Court because the cause of action arose in Polk County, the Municipality is located in Polk County, and the individual Defendants also reside in Polk County.

9. Subject matter jurisdiction is conferred on this Court by 28 U.S.C. §1331 as this action arises under the Constitution of the United States, specifically the First Amendment; and also 28 U.S.C. § 2201 (Declaratory Judgment Act).

10. Supplemental jurisdiction for state law claims is conferred by 28 U.S.C. § 1367, as the Plaintiff's state and federal claims arise out of a common nucleus of operative facts, as more fully set forth below.



11. Plaintiff has complied with all conditions precedent to the filing of this suit, including Florida Statute 768.28(6).

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

12. The City of Lakeland sponsors and allows a senior dance club, the Lakeland Senior Dance and Social Club, ("LSDS Club") to hold dance events and meetings at the Magnolia Building.

13. The agreement between LSDS Club officer Gill and the City of Lakeland characterizes Gill as an "instructor" and the LSDS Club as a "class" to allow access to the city's facility for organized recreational activities—primarily a dance.

14. The LSDS Club holds weekly, secular-based, events that are an integral part of the Lakland senior citizen community.

15. The LSDS Club collects an admission fee from a dance attendee, and the attendee is contemporaneously deemed a member.

16. At all relevant times, West attended meetings and dances held by the LSDS Club, and paid monetary dues, and is over eighty years of age.

17. At all relevant times, Gill has been the designated instructor of the LSDS Club, and is over eighty years of age.

18. While the LSDS Club has adopted official by-laws, Gill used his instructor authority, pursuant to the agreement with the City of Lakeland, to manipulate club elections to maintain control of the LSDS Club operations by excluding candidates not aligned with him.

19. Gill's unilateral control, with the assistance of Royer, Beck, and Vople, also allowed him to direct the LSDS Club budget and



spending.

20. When the disc jockey providing music services for the LSDS Club expressed a desire to run for a club officer position, Gill blocked the disc jockey's candidacy and also terminated the service contract.

21. As an active member of the LSDS Club, West voiced his opposition to Gill's improprieties at club meetings and dances on several occasions between 2020 and 2024.

22. West's opposition prompted Gill to begin a personal vendetta, against West.

23. Gill's personal vendetta against West did not advance any legitimate public interest.

24. Gill would also not follow LSDS Club conduct protocols required by the City of Lakeland when he singled-out West for harassment and ridicule.

25. The LSDS Club meetings minutes reflect that West was a positive presence and advanced LSDS Club business items at meetings, and has been the only LSDS Club member to receive a trophy for his club volunteer work.

26. Gill intentionally miscounted LSDS Club election votes in December 2022, for official club positions for the 2023 calendar year official club positions, when the counting of approximately 100 votes took over seventy-five minutes.

27. However, at the October 5, 2023 LSDS Club meeting, Gill publicly berated West by telling him to "shut up". This statement was recorded in the meeting minutes, and was published, disseminated, and recorded as part of City of Lakeland official records.

28. Several LSDS Club members approached West and informed him that Gill had



stated to them that West was obstructing club business by voicing his opinions, and that Gill boasted that he had told West to shut up.

29. Gill also portrayed West as a disruptive presence and that West's banishment from attending LSDS Club events and meetings was necessary to prevent obstruction of LSDS Club operations.

30. In March 2024, when West presented a petition for transparency, Gill continued to defame West and further orchestrated events to ban West from the Magnolia Building and all LSDS Club events.

31. To advance his vendetta against West, Gill wrote to Lakeland city officials on May 17, 2024, making false accusations that West was obstructing club business, was verbally abusive and threatening club officers. Gill republished that West was a "bully" and obstructing LSDS Club recreational activities.

32. Gill also republished statements that he attributes to other LSDS officers.

33. Gill's defamatory statements were repeated on several different occasions to the same or different audience.

34. These statements to the City of Lakeland, LSDS Club officials, and LSDS Club members were false and malicious.

35. Gill published false and malicious statements to City of Lakeland, to LSDS club officers, and to attendees at the Club.

36. Around the time of the 2023/2024 LSDS Club elections, a false statement by Gill accused West of physical assault.

37. Another false statement accused West of intimidating club attendees.



5

38. Gill's statements culminated in the lifetime banishment of West from the Magnolia Building, and all LSDS Club events and meetings.

39. West did not physically touch or strike Gill and did not intimidate LSDS Club attendees.

40. Gill's statements accused West of ethical violations, unscrupulous professional and community misconduct, and acts of moral turpitude.

41. In all written correspondence and verbal statements, Gill maliciously attacked and maligned West's character and ethics, and further subjecting West to ridicule and contempt by the Lakeland senior community

42. Gills's conduct and statements have discouraged and dissuaded West and his spouse from participating in other community events.

43. West has never been charged or convicted of any crimes of dishonesty, or been charged with unethical conduct in any capacity, or deemed unethical in any legal or administrative proceeding. Instead West, during a longstanding working career, maintained a professional license which had required him to complete public ethics training.

44. West engaged in protected activity in speaking at LSDS Club meetings sponsored by City of Lakeland, which was within West's First Amendment rights.

45. In March 2024, West further presented a petition for transparency to the City of Lakeland, via its Recreation Department, concerning the city's duty to allow West to exercise free speech regarding club operations, and especially club elections.

46. March 14, 2024, Gill contacted the City of Lakeland, and the officer dispatched, "Bailey", issued West a trespass citation (no. 2224-00025538).



47. On March 18, 2024, West made a presentation at a City Commission meeting to implore the City of Lakeland to not restrict his free speech rights but was informed that his protected expression(s) was a private club matter unrelated to City of Lakeland.

48. These actions by City of Lakeland against West, including issuing a trespass citation, instructing him to leave the premises, were in further retaliation for the exercise of West's First Amendment rights.

49. In November 2024, West contacted City of Lakeland law enforcement officer Bailey and Bailey informed West that he would subject to arrest because of a trespass citation in effect from January 2020, along with the recent March 14, 2024 citation.

50. City of Lakeland law enforcement officers are authorized to enforce trespass violations pursuant to Sections 810.08 and 810.09, Florida Statutes.

## COUNT I — <u>DECLARATORY JUDGMENT (against each Defendant)</u>

51. West re-alleges and incorporates by reference paragraphs 1 through 50 as though fully set forth herein.

52. West brings this Count I for declaratory relief pursuant to Fed. R. Civ. P. 57 against each named Defendant in this lawsuit.

53. West has been informed by City of Lakeland law enforcement officer(s) that he would be subject to arrest if he attempted entry to the LSDS Club. West has previously been cited by the City of Lakeland with a trespass violation (no. 20-353) at the building where LSDS Club events are held—this violation was purportedly rescinded by City of Lakeland Parks and Recreation Supervisor Kimberly Stopiak.



54. In contradiction, City of Lakeland commission officials have absolved themselves of any responsibility and have proclaimed that West's exclusion is a club business matter where the decision to deny membership to West is attributable to LSDS Club leadership—namely Gill, Royer, Beck, and Vople.

55. However, City of Lakeland sponsored and authorized the formation of the LSDS Club, with regulatory oversight over the club's operations.

56. The LSDS Club's designated "instructor" and club President Gill carries a personal vendetta where West has been ostracized and perpetually banished from participating in civic activities and exercising his Constitutional rights by Gill, and his lackeys consisting of LSDS Club leaders Royer, Beck, and Vople.

57. West's injuries caused by the City of Lakeland, Gill, Royer, Beck, and Vople can be redressed by this Court.

**WHEREFORE**, West respectfully requests that the Court enter a declaratory judgment in his favor, and against each Defendant, and any and all damages, together with costs of suit and reasonable attorney fees, and such other and further relief as this Court may deem just, equitable, and proper.

## COUNT II — <u>FIRST AMENDMENT RETALIATION</u>

58. West incorporates the allegations made in Paragraphs 1 through 50 as if stated herein in their entirety.

59. West brings this Count II against Defendant City of Lakeland.

60. West voiced his concerns about the administration of the LSDS Club, a club



sponsored and authorized by the City of Lakeland, by an "instructor", and his lackeys appointed by City of Lakeland.

61. Aside from the empowering LSDS Club instructor and officers, City of Lakeland's Commission and law enforcement personnel further curtailed West's protected expressions under the First Amendment to the Constitution.

62. When West engaged in protected expressions under the First Amendment, City of Lakeland's officers, agents, and employees took retaliatory actions against West in response to his protected expressions, and where such actions would deter a person from continuing to engage in protected activities.

63. As a direct and proximate result of City of Lakeland's actions, West has lost enjoyment of life, has suffered emotional distress, loss of reputation, and financial loss due to the violations of his constitutional rights.

64. City of Lakeland's actions were taken in reckless disregard and indifference to West's federally protected rights.

**WHEREFORE**, West respectfully requests that the Court declare that Defendant's actions violation Plaintiff's First Amendment rights; issue a permanent injunction prohibiting Defendant from engaging in similar conduct; award Plaintiff compensatory and punitive damages in an amount to be determined at trial, together with costs of suit and reasonable attorney fees, and such other and further relief as this Court may deem just, equitable, and proper.

### COUNT III — <u>FIRST AMENDMENT VIOLATION</u>

65. West incorporates the allegations made in Paragraphs 1 through 50 as if stated



herein in their entirety.

66. West brings this Count III against Defendant City of Lakeland.

67. West voiced his concerns about the administration of the LSDS Club, a club sponsored and authorized by the City of Lakeland, by an "instructor", and his lackeys appointed by City of Lakeland.

68. Aside from the empowering LSDS Club instructor and officers, City of Lakeland's Commission and law enforcement personnel further curtailed West's protected expressions under the First Amendment to the Constitution.

69. City of Lakeland, through its officers, agents, and employees, maintained or implemented a policy, custom, or practice that violated the First Amendment rights of West.

70. This policy, custom, or practice was the moving force behind the constitutional violation suffered by West.

71. As a direct and proximate result of City of Lakeland's actions, West has lost enjoyment of life, has suffered emotional distress, loss of reputation, and financial loss due to the violations of his constitutional rights.

72. City of Lakeland's actions were taken in reckless disregard and indifference to West's federally protected rights.

**WHEREFORE**, West respectfully requests that the Court declare that Defendant's actions violation Plaintiff's First Amendment rights; issue a permanent injunction prohibiting Defendant from engaging in similar conduct; award Plaintiff compensatory and punitive damages in an amount to be determined at trial, together with costs of suit and reasonable



attorney fees, and such other and further relief as this Court may deem just, equitable, and proper.

### COUNT IV – <u>INTENTIONAL INFLICTION OF SEVERE EMOTIONAL DISTRESS</u>

73. West incorporates the allegations made in Paragraphs 1 through 50 as if stated herein in their entirety.

74. West brings this Count III against Defendant David Gill.

75. Gill engaged in deliberate or reckless conduct to inflict emotional distress upon West.

76. Gill's conduct was outrageous.

77. Gill's conduct caused West to suffer emotional distress.

78. West's emotional distress was severe.

**WHEREFORE**, West requests this Court to enter a judgment against Defendant Gill, an award of damages and prejudgment interest, along with costs of suit and reasonable attorney fees, and such other and further relief as this Court may deem just, equitable, and proper.

### COUNT V – <u>DEFAMATION (LIBEL PER SE)</u>

79. West incorporates the allegations made in Paragraphs 1 through 50 as if stated herein in their entirety.

80. West brings this Count IV against Defendant David Gill.

81. Gill published defamatory statements labeling West as an uncultured "bully" that was obstructing LSDS Club events, causing an interruption of recreational activities which were instrumental to the enjoyment of the Lakeland senior community.



82. The subject matter of the defamatory statements is substantially and materially false.

83. The abusive, defamatory statements made by Defendant were not subject to any applicable privilege, or made in the course of any judicial proceeding or legislative investigation.

84. The defamatory statements are actionable per se since they tend to subject West to hatred, distrust, ridicule, contempt, or disgrace.

85. Gill made such false statements with actual knowledge of their falsity, or in reckless disregard of their truth or falsity.

86. Gill's defamatory statements were made with actual malice, in that he intended to inflict reputational, emotional, and physical harm.

87. As a result of Gill's conduct West suffered damages, including past and future economic and non-economic damages, including harm to reputation, emotional distress, mental anguish, pain and suffering, humiliation, embarrassment, aggravation of a pre-existing or latent condition, past and future medical expenses, and other past and future direct and indirect economic loss.

88. Gill's false and defamatory statements, and their reasonably foreseeable repetition and republication, impede West from participating in recreational activities sponsored by the LSDS Club.

**WHEREFORE**, West demands judgment against Defendant Gill, including a finding that Defendant Gill is guilty of defamation and ordering Defendant to cease further defamation of Plaintiff along with an award of damages caused by Defendant's wrongful acts, along with an



award of damages and prejudgment interest, together with costs of suit and reasonable attorney fees, and such other and further relief as this Court may deem just, equitable, and proper.

## COUNT VI – <u>DEFAMATION (SLANDER PER SE)</u>

89. West incorporates the allegations made in Paragraphs 1 through 50 as if stated herein in their entirety.

90. West brings this Count V against Defendant David Gill.

91. Gill published defamatory statements labeling West as an uncultured "bully" that was obstructing LSDS Club events, causing an interruption of recreational activities which were instrumental to the enjoyment of the Lakeland senior community.

92. The subject matter of the defamatory statements is substantially and materially false.

93. The abusive, defamatory statements made by Defendant were not subject to any applicable privilege, or made in the course of any judicial proceeding or legislative investigation.

94. The defamatory statements are actionable per se since they tend to subject West to hatred, distrust, ridicule, contempt, or disgrace.

95. Gill made such false statements with actual knowledge of their falsity, or in reckless disregard of their truth or falsity.

96. Gill's defamatory statements were made with actual malice, in that Defendant intended to inflict reputational, emotional, and physical harm.

97. As a result of Gill's conduct West suffered damages, including past and future economic and non-economic damages, including harm to reputation, emotional distress, mental anguish, pain and suffering, humiliation, embarrassment, aggravation of a pre-existing or latent



condition, past and future medical expenses, and other past and future direct and indirect economic loss.

98. Gill's false and defamatory statements, and their reasonably foreseeable repetition and republication, impede West from participating in recreational activities sponsored by the LSDS Club.

**WHEREFORE**, West demands judgment against Defendant, including a finding that Defendant is guilty of defamation and ordering Defendant to cease further defamation of Plaintiff along with an award of damages caused by Defendant's wrongful acts, along with an award of damages and prejudgment interest, together with costs of suit and reasonable attorney fees, and such other and further relief as this Court may deem just, equitable, and proper.

### VII — <u>AIDING AND ABETTING (Defendant Jan Royer)</u>

99. West incorporates the allegations made in Paragraphs 1 through 50 as if stated herein in their entirety.

100. West brings this Count VII against Defendant Jan Royer.

101. Royer knowingly gave assistance to Gill in defaming and inflicting emotional distress upon West in a manner that enabled Gill to commit the underlying torts.

102. In her role as Secretary of the LSDS Club, Royer assisted Gill in defaming, and inflicting emotional distress, West as an obstructionist to allow Gill to have unilateral control over LSDS Club finances and operations.

103. In the course of conducting LSDS Club business, Royer routinely voted in tandem with Gill, including amending club by-laws to advance Gill's illegal actions against West, such



as the prohibition of Ken Miller to run for club officer for a 2024 calendar year election; and issuing official club reprimands of West.

104. Royer assisted in the miscounting of LSDS Club election votes in December 2022, for official club positions for the 2023 calendar year official club positions, when the counting of approximately 100 votes took over seventy-five minutes.

105. Royer would further record official LSDS Club minutes in a manner that advanced Gill's illegal actions against West.

106. The conduct of Royer was willful and malicious.

107. As a direct and proximate result of Royer's conduct, West has sustained damages, as alleged herein.

**WHEREFORE**, West demands judgment against Defendant Jan Royer, including a finding that Defendant is guilty of aiding and abetting and ordering Defendant to cease further assistance of Defendant Gill, along with an award of damages caused by Defendant's wrongful acts, an award of damages and prejudgment interest, together with costs of suit and reasonable attorney fees, and such other and further relief as this Court may deem just, equitable, and proper.

### VIII — AIDING AND ABETTING (Defendant Lonie Beck)

108. West incorporates the allegations made in Paragraphs 1 through 50 as if stated herein in their entirety.

109. West brings this Count VIII against Defendant Lonie Beck.

110. Beck knowingly gave assistance to Gill in defaming and inflicting emotional distress upon West in a manner that enabled Gill to commit the underlying torts.



111. In the role of Treasurer of the LSDS Club, Beck assisted Gill in defaming, and inflicting emotional distress, West as an obstructionist to allow Gill to have unilateral control over LSDS Club finances and operations.

112. In the course of conducting LSDS Club business, Beck routinely voted in tandem with Gill, including amending club by-laws to advance Gill's illegal actions against West.

113. Beck's assistance included the prohibition of Ken Miller, and other viable candidates, to run for club officer in for a calendar year 2024 election.

114. The conduct of Beck was willful and malicious.

115. As a direct and proximate result of Beck's conduct, West has sustained damages, as alleged herein.

**WHEREFORE**, West demands judgment against Defendant Lonie Beck, including a finding that Defendant is guilty of aiding and abetting and ordering Defendant to cease further assistance of Defendant Gill, along with an award of damages caused by Defendant's wrongful acts, an award of damages and prejudgment interest, together with costs of suit and reasonable attorney fees, and such other and further relief as this Court may deem just, equitable, and proper.

### IX — AIDING AND ABETTING (Defendant Laberta Vople)

116. West incorporates the allegations made in Paragraphs 1 through 50 as if stated herein in their entirety.

117. West brings this Count IX against Defendant Laberta Vople.

118. Vople knowingly gave assistance to Gill in defaming and inflicting emotional distress upon West in a manner that enabled Gill to commit the underlying torts.



119. As a voting committee chairman of the LSDS Club, along with other official club positions, Vople assisted Gill in defaming, and inflicting emotional distress, West as an obstructionist to allow Gill to have unilateral control over LSDS Club finances and operations.

120. In the course of conducting LSDS Club business, Vople routinely voted in tandem with Gill, including amending club by-laws to advance Gill's illegal actions against West such as the prohibition of Ken Miller to run for club officer for a 2024 calendar year election; and issuing official club reprimands of West.

121. In addition to engaging in the miscounting of votes in other prior years, Vople assisted in the miscounting of LSDS Club election votes in December 2022, for official club positions for the 2023 calendar year official club positions, when the counting of approximately 100 votes took over seventy-five minutes.

122. The conduct of Vople was willful and malicious.

123. As a direct and proximate result of Vople's conduct, West has sustained damages, as alleged herein.

**WHEREFORE**, West demands judgment against Defendant Laberta Vople, including a finding that Defendant is guilty of aiding and abetting and ordering Defendant to cease further assistance of Defendant Gill, along with an award of damages caused by Defendant's wrongful acts, an award of damages and prejudgment interest, together with costs of suit and reasonable attorney fees, and such other and further relief as this Court may deem just, equitable, and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable in this action.



Dated: January 21, 2025                    Respectfully submitted,

/s/ *Derek P. Usman*
Derek P. Usman
Florida Bar No. 0120303
Email: derek@usmanfirm.com
**The Usman Law Firm, P.A.**
505 East Jackson Street, Suite 305
Tampa, FL 33602
(813) 377-1197 telephone
*Attorney for Plaintiff*