UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GARY WEST,

    Plaintiff,

v.                                                                  Case No.: 8:25-cv-00159-TPB-AEP

CITY OF LAKELAND, DAVID GILL, JAN ROYER, LONIE BECK, and LABERTA VOLPE,

    Defendants.
_____/

**DEFENDANT, LABERTA VOLPE'S, MOTION TO DISMISS COUNTS XXXI THROUGH LX OF AMENDED COMPLAINT**

Defendant, LABERTA VOLPE,[1] by and through her undersigned counsel, and pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6), moves this Court for dismissal of Counts XXXI through LX of Plaintiff, GARY WEST's, Amended Complaint (Doc. 18), and in support thereof states:

**I.    Standard of Review**

A motion to dismiss assumes the accuracy of a pleading's factual allegations. This does not disadvantage legal arguments which assume the

---

[1] In Plaintiff's Amended Complaint (Doc. 18), as highlighted in Ms. Volpe's previous Motion to Dismiss (Doc. 10), Ms. Volpe's name is incorrectly spelled "Vople." In addition, throughout the Amended Complaint, Plaintiff periodically refers to Ms. Volpe as "Roberta" instead of Laberta. For clarity of the record, the proper defendant is Laberta Volpe.

truth of the factual allegations, and contend that such allegations do not entitle the pleader to relief:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

*Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 555 (2007) (cleaned up). If the facts "do not permit the court infer more than the mere possibility of misconduct" the complaint may be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Allegations which are mere conclusions are not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 679; *Twombley*, 550 U.S. at 555. This allows a court to disregard conclusory claims of constitutional violations, defamation, emotional distress, and the like. Such conclusions must be supported by allegations of fact to demonstrate each element of the claim asserted.[2] The absence of facts to support an element of a claim will justify

---

[2] Under this rule, the conclusory allegations in paragraphs 18-19, 23, 32, 35-37, 42-43, 46, 49, 51, 54-56, 66-67, 73-74, 78-82, 85-88, 91-94, 97-100, 103-106, 109-112, 115-122, 125-132, 135-137, 140-142, 145-148, 151-153, 156-158, 161-163, 166-168, 172-174, 177-179, 182-184, 187-188, 191-193, 196-198, 201-203, 206-207, 210-212, 215-217, 220-222, 225-227, 229-231, 234-240, 243-245, 248-249, 252-254, 257-258, 261-263, 266-267, 270-272, 274-276, 279-281, 283-284, 287-290, 292-293, 296-298, 300-301, 304-307, 309-310, 313-315, 317-318, 321-322, 333-335 (Plaintiff's Amended Complaint (Doc. 18) skips directly from paragraph 322 to paragraph 333),  337-338, 341-345, 347-348, 351-358, 361-365, 367-368, 371-377, 380-385, 388-394, 397-402, 405-411, 414-419, and other allegations of the Amended Complaint (Doc. 18) may be disregarded.

dismissal. *Twombley*, 550 U.S. at 564-70. This allows dismissal unless the plaintiff has pled facts supporting a reasonable inference of liability. *Iqbal*, 556 U.S. at 678.

"A shotgun pleading is a complaint that violates either Federal Rule of Civil Procedure 8(a)(2) or 10(b), or both. *Sanchez Sifonte v. Fonesca*, Case No. 21-CV-20545-O'SULLIVAN, 2021 WL 5086297, at *2 (S.D. Fla. Nov. 1, 2021) (quoting *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021)). The Eleventh Circuit has identified four types of shotgun pleadings, including "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id*. (quoting *Barmapov*, 986 F.3d at 1324-25).

## II.  Allegations of the Amended Complaint (Doc. 18)

While many of Plaintiff, GARY WEST's (hereinafter "West"), allegations are not accurate, we are required to accept the allegations of the Amended Complaint for purposes of this Motion to Dismiss. There relevant allegations are recited below.

The Lakeland Senior Dance and Social Club (hereinafter the "Club") holds dance events and meetings at the Magnolia Building in Lakeland, Florida. (Doc. 18, ¶ 12). Any attendee of a dance hosted by the Club is deemed

3

a member of the Club. (Doc. 18, ¶ 15). West was a member of the Club. (Doc. 18, ¶ 16).

West voiced opposition to Defendant, DAVID GILL (hereinafter "Gill"), on several occasions. (Doc. 18, ¶ 21). According to West, this prompted Gill to begin a personal vendetta against West. (Doc. 18, ¶ 22). On October 5, 2023, Gill allegedly told West to "shut up," (Doc. 18, ¶ 27), and told other Club members that West was obstructing Club business. (Doc. 18, ¶ 29). Further, Gill portrayed West as a "disruptive presence and that West's banishment from attending [Club] events and meetings was necessary to prevent obstruction of [Club] operations." (Doc. 18, ¶ 31).

Gill wrote to Defendant, CITY OF LAKELAND (hereinafter the "City"), accusing West of obstructing Club business as well as threatening and abusing Club officers. (Doc. 18, ¶ 33). Later, in March of 2024, Gill contacted the City, and an officer of the City issued a trespass citation to West. (Doc. 18, ¶ 48). According to West, Defendants, JAN ROYER (hereinafter "Royer"), LONIE BECK (hereinafter "Beck"), and LABERTA VOLPE (hereinafter "Volpe"), were aware West was issued a trespass citation. (Doc. 18, ¶ 49). However, West provides no information to support a conclusion that any of these defendants had knowledge of the citation. West alleges this citation was in "further retaliation for the exercise of [his] First Amendment rights." (Doc. 18, ¶ 51).

West then alleges Royer, Beck, and Volpe had "constructive knowledge," and "*tacitly* agreed with each other," Gill, and the City, "through their actions, and *non-explicit communications*, to further their conspiratorial intent and provide assistance to each other . . . and the [City] in violating West's Constitutional rights." (Doc. 18, ¶ 54) (emphasis added). Based on this "tacit" agreement and these "non-explicit" communications – neither having any support in the facts alleged – West brings ten (10) causes of action against Volpe: (1) Count XXXI – Conspiracy – First Amendment Retaliation; (2) Count XXXII – Aiding and Abetting – First Amendment Retaliation; (3) Count XXXIII – Conspiracy – First Amendment Violation; (4) Count XXXIV – Aiding and Abetting – First Amendment Violation; (5) Count XXXV – Conspiracy – Intentional Infliction of Severe Emotional Distress; (6) Count XXXVI – Aiding and Abetting – Intentional Infliction of Severe Emotional Distress; (7) Count XXXVII – Conspiracy – Defamation (Slander Per Se); (8) Count XXXVIII – Aiding and Abetting – Defamation (Slander Per Se); (9) Count XXXIX – Conspiracy – Defamation (Libel Per Se); and (10) Count XL – Aiding and Abetting – Defamation (Libel Per Se).

### III. Legal Argument

For the reasons set forth in the following pages, all ten (10) of West's claims against Volpe should be dismissed.[3]

#### A. First Amendment Claims Fail

In Counts XXXI through XXXIV, West attempts to bring claims against Volpe under the First Amendment. Under the First Amendment, "*Congress shall make no law . . .* abridging the freedom of speech." U.S. Const. amend. I (emphasis added). "'[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). Volpe is not a government official. Therefore, Volpe cannot be found liable for abridgment of West's Speech. *See Manhattan Community Access Corp. v. Halleck*, 587 U.S. 802, 808 (2019) ("The Free Speech Clause does not prohibit *private* abridgement of speech" (emphasis in the original)).

Because Volpe is a private individual, West attempts to circumvent this limitation by alleging "conspiracy" and "aiding and abetting." While West fails to cite it, this claim falls under 42 U.S.C. § 1985(3). Under that statute, "[i]f

---

[3] In addition to the legal arguments provided herein as to West's failure to state a claim upon which relief can be granted, under Federal Rule of Civil Procedure 12(b)(6), West's Amended Complaint also constitutes a shotgun pleading, as his First Complaint did, and should be dismissed under Federal Rule of Civil Procedure 8.

6

two or more persons in any State . . . conspire . . . for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws," then "the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators." 42 U.S.C. § 1985(3). However, West fails to state a claim upon which relief can be granted.

In order to claim a violation of section 1985(3), a plaintiff must allege four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *United Brotherhood of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 829-30 (1983). But the law also requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 834 (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) ("The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." (emphasis in the original)); *see also Wrenn v.*

7

*Ledbetter*, 697 F.Supp. 483, 487 (N.D. Ga. 1988), *aff'd* 880 F.2d 420 (11th Cir. 1989) (same).

Here, West fails to demonstrate that any alleged conspiracy was motivated by racial or other class-based discrimination. Instead, West alleges a conspiracy aimed at a singular individual, himself. Not only do Counts XXXI through XXXIV fall short of the Federal Rules of Civil Procedure's standards, but they also fail to meet the basic requirements of a claim under 42 U.S.C. § 1985(3). Therefore, West's First Amendment claims against Volpe should be dismissed.

### B.     State Law Claims Fail

Counts XXXV through XL in West's Amended Complaint are repetitive claims for conspiracy and aiding and abetting (1) intentional infliction of severe emotional distress (Counts XXXV and XXXVI) and (2) defamation (Counts XXXVII through XL). All these claims fail as West fails to establish the necessary elements of conspiracy and aiding and abetting.

Under Florida law, the elements of a civil conspiracy are: (1) a conspiracy between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) damage to the plaintiff as a result of the acts performed pursuant to the conspiracy. *Walters v. Blankenship*, 931 So. 3d 137, 140 (Fla. 5th DCA 2006). Necessarily, "[a]n actionable conspiracy requires an actionable

8

underlying tort." *Wright v. Yurko*, 448 So. 2d 1161, 1165 (Fla. 5th DCA 1984). Therefore, "[a]n act which does not constitute the basis for a cause of action against one person cannot be made the basis for a civil action for conspiracy." *Id.* (citing *Buchanan v. Miami Herald Publ'g Co.*, 230 So. 2d 9 (Fla. 1969)). As with West's claims, "where a plaintiff merely alleges 'conclusory, vague, and general allegations of conspiracy,' dismissal of the conspiracy claim may be proper." *Mickens v. Tenth Judicial Circuit*, 181 Fed.Appx. 865, 876 (11th Cir. 2006) (quoting *Kearson v. Southern Bell Tel. & Tel. Co.*, 763 F.2d 405, 407 (11th Cir. 1985)).

Similarly, the elements necessary to sustain an aiding and abetting claim are: (1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor. *Carney v. IDI-DX, Inc.*, No. 2:12-cv-00449-FtM-29DNF, 2013 WL 4080326, at *3 (M.D. Fla. Aug. 13, 2013) (quoting *Lawrence v. Bank of Am., N.A.*, 455 F.App'x 904, 906 (11th Cir. 2012)). The first element, thus, requires a cause of action against the primary wrongdoer, which here is Gill.

Beyond the fact that West's sole allegation to support any conspiracy or agreement amongst the parties is a "tacit agreement" based on "non-explicit communications," (Doc. 18, ¶ 54), West fails to state claims for intentional

9

infliction of severe emotional distress and defamation against Gill. Therefore, West fails to state a claim upon which relief can be granted for conspiracy and aiding and abetting against Volpe, and this Court should dismiss Counts XXXV through XL.

### 1. Intentional Infliction of Severe Emotional Distress

In order to state a claim for intentional infliction of emotional distress, West must demonstrate: (1) the wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. *Gallogly v. Rodgriguez*, 970 So. 2d 470, 471 (Fla. 2d DCA 2007); *see also Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015). Courts decide as a matter of law whether the alleged conduct is sufficiently outrageous to allow a claim for intentional infliction of emotional distress. *See Vance v. Southern Bell Tel. & Tel. Co.*, 983 F.2d 1573, 1575 n. 7 (11th Cir. 1993). "Florida courts use a very high standard in evaluating whether the facts alleged are sufficiently outrageous to support a claim for intentional infliction of emotional distress." *Foreman v. City of Port St. Lucie*, 294 F.App'x 554, 556 (11th Cir. 2008). Liability does not extent to

"mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Scheller v. American Medical Int'l*, 502 So. 2d 1268, 1271 (Fla. 4th DCA 1987) (quoting Restatement (Second) of Torts § 46 Comment (d) (1965)).

The entirety of West's claim for intentional infliction of severe emotional distress is as follows: (1) "Gill engaged in deliberate or reckless conduct to inflict emotional distress upon West" (Doc. 18, ¶ 109); (2) "Gill's conduct was outrageous" (Doc. 18, ¶ 110); (3) "Gill's conduct caused West to suffer emotional distress" (Doc. 18, ¶ 111); and (4) "West's emotional distress was severe" (Doc. 18, ¶ 112). This is a complete recital of the elements of a cause of action for intentional infliction of severe emotional distress. Such threadbare recitals cannot be relied upon to survive a Rule 12(b)(6) motion. *Carney*, 2013 WL 4080326 at *2. In addition, none of the facts alleged in paragraphs 12 through 58 – which West attempts to incorporate into all forty (40) causes of action – meet the heightened standard of outrageous conduct.

Instead, it seems more likely that Plaintiff is attempting to reallege his claims for defamation into claims for intentional infliction of severe emotional distress. However, "[a] plaintiff cannot transform a defamation action into a claim for intentional infliction of emotional distress simply by characterizing the alleged defamatory statements as 'outrageous.'" *Rubinson v. Rubinson*, 474 F.Supp.3d 1270, 1278 (S.D. Fla. 2020) (quoting *Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992)).

11

West fails to allege a base cause of action for intentional infliction of severe emotional distress. Because "[a]n actionable conspiracy requires an actionable underlying tort," *Wright*, 448 So. 2d at 1165, and because a necessary element of aiding and abetting is "an underlying violation on the part of the primary wrongdoer," *Carney*, 2013 WL 4080326 at *3, West also fails to state a claims for conspiracy and aiding and abetting upon which relief can be granted against Volpe. Therefore, this Court should dismiss Counts XXXV and XXXVI.

### 2. Defamation

West attempts to bring two causes of action for defamation against Gill and extend liability to Volpe. Count IX against Gill is for libel, and Count X against Gill is for slander. The allegations in both counts are identical. The statements West alleges are defamatory are "statements labeling West as an uncultured 'bully' that was obstructing [Club] events, causing an interruption of recreational activities which were instrumental to the enjoyment of the Lakeland senior community." (Doc. 18, ¶¶ 115, 125). Following this single factual allegation, the remainder of both counts are merely legal conclusions.

However, one legal conclusion alleged is particularly important. West alleges: "The abusive, defamatory statements made by [Gill] *were not subject to any applicable privilege*, or made in the court of any judicial proceeding or

12

legislative investigation." (Doc. 18, ¶¶ 117, 127) (emphasis added). Not only is this a legal conclusion, but it is also a wholly incorrect legal conclusion.

As stated above, the Club holds dance events and meetings at the Magnolia Building in Lakeland, Florida. (Doc. 18, ¶ 12). Any attendee of a dance hosted by the Club is deemed a member of the Club. (Doc. 18, ¶ 15). West was a member of the Club. (Doc. 18, ¶ 16). The alleged defamatory statements were made in a report to the City in which Gill reported West was obstructing club business and bullying other members of the Club. (Doc. 18, ¶ 33).

Under Florida law, the general rule is that statements and communications made in connection with the various activities of an organization, like the Club, enjoy a qualified privilege. *Loeb v. Geronemus*, 66 So. 2d 241, 244 (Fla. 1953); *Rosenberg v. American Bowling Congress*, 589 F.Supp. 546 (M.D. Fla. 1984). According to this rule, members of such bodies "'may report on the qualifications of applicants, prefer chargers against fellow members, offer testimony in support of the charges, and make proper publication of any disciplinary action taken, without liability for any resultant defamation.'" *Loeb*, 66 So. 2d at 244 (quoting 33 Am. Jur., Libel and Slander, § 132). These statements may be made so long as they are made without malice. *Id*. However, "[t]he malice which vitiates a qualified privilege must be actual malice, i.e., ill will, hostility and an evil intention to defame and injure, which

cannot be inferred simply from the falsity of the statements." *Rosenberg*, 589 F. Supp. at 552.[4]

The only allegations in support of any malice are the statements: "Gill's defamatory statements were made with actual malice, in that he intended to inflict reputational, emotional, and physical harm." (Doc. 18, ¶¶ 130, 130). There are no factual allegations to support this conclusory statement, and such a statement cannot be relied upon to survive a Rule 12(b)(6) motion. *Carney*, 2013 WL 4080326 at *2. Thus, West fails to allege a base cause of action for defamation. Because "[a]n actionable conspiracy requires an actionable underlying tort," *Wright*, 448 So. 2d at 1165, and because a necessary element of aiding and abetting is "an underlying violation on the part of the primary wrongdoer," *Carney*, 2013 WL 4080326 at *3, West also fails to state a claims for conspiracy and aiding and abetting upon which relief can be granted

---

[4] The Florida Supreme Court has also described how express malic is proven:

> Where a person speaks upon a privileged occasion, but the speaker is motivated by a desire to harm the person defamed than by a purpose to protect the personal or social interest giving rise to the privilege, then it can be said that there was express malice and the privilege is destroyed. Strong, angry, or intemperate words do not alone show express malice; rather, there must be a showing that the speaker used his privileged position "to gratify his malevolence."

*Crestview Hosp. Corp. v. Coastal Anesthesia, P.A.*, 203 So. 3d 978, 981 (Fla. 1st DCA 2016) (quoting *Nodar v. Galbreath*, 462 So. 2d 803, 810 (Fla. 1984)).

against Volpe. Therefore, this Court should dismiss Counts XXXVII through XL.

For all the reasons stated, Counts XXXI through LX of West's Amended Complaint (Doc. 18) should be dismissed.

## Local Rule 3.01(g) Certification

Undersigned counsel certifies conferring with Plaintiff's counsel via e-mail, during which the parties were not able to agree on the resolution of this Motion to Dismiss Counts XXXI through LX of Amended Complaint.

Respectfully submitted,

**PETERSON & MYERS, P.A.**

/s/ Michael T. Konen
**Joshua K. Brown**
Florida Bar No. 0657573
**Michael T. Konen**
Florida Bar No.: 1040217
225 East Lemon Street, Suite 300
Post Office Box 24628
Lakeland, Florida 33801
Telephone: 863-683-6511
Facsimile:  863-884-1629
JKBServe@PetersonMyers.com
MKonen@PetersonMyers.com
*Counsel for Defendant, Laberta Volpe*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing pleading has been filed with the Court using the CM/ECF system this **24th** day of **March, 2025,** which will provide a true and correct copy to counsel of record.

By: /s/ Michael T. Konen
Michael T. Konen