## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

GARY WEST,

      Plaintiff,

v.                                                                         Case No. 8:25-cv-159-TPB-AEP

CITY OF LAKELAND, DAVID GILL
JAN ROYER, LONIE BECK, and
LABERTA VOLPE,

      Defendants.
_____/

### <u>ORDER GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS</u>

This matter is before the Court on the following motions:

> "Defendant, LaBerta Volpe's, Motion to Dismiss Counts
> XXXI Through LX of Amended Complaint" (Doc. 25);
>
> "Defendant City of Lakeland's Motion to Dismiss
> Amended Complaint" (Doc. 26); and
>
> Defendants David Gill, Jan Royer, and Lonie Beck's
> "Motion to Dismiss Amended Complaint" (Doc. 28).

Plaintiff Gary West filed responses in opposition.  (Docs. 37; 38; 39).  After

reviewing the motions, responses, court file, and the record, the Court finds as

follows:

## Background[1]

This action stems from Plaintiff Gary West's exclusion from the Lakeland Senior Dance and Social Club ("Club"), which holds weekly dances and meetings that are an "integral part of the Lakeland senior citizen community."  The Club holds its events at the Magnolia Building, which is owned by the City of Lakeland. The Club requires members to pay fees to attend each dance, has adopted by-laws, and periodically holds elections for officer positions.  At all relevant times, Gill was the Club's president, Royer was the secretary, Beck was the treasurer, and Volpe was the voting committee chairperson.

Plaintiff alleges that Gill developed a "personal vendetta" against him after Plaintiff voiced opposition to Gill's alleged mismanagement of the Club on several occasions between 2020 and 2024.  Specifically, Plaintiff alleges that Gill and the other officers intentionally miscounted votes during the 2022 Club election and excluded certain candidates from running for positions.  Apparently, Plaintiff repeatedly criticized Gill over the election and other matters, which resulted in Gill telling Plaintiff to "shut up," and eventually caused Gill to write to City officials that Plaintiff was a "bully" that was obstructing Club activities.  Plaintiff further alleges that Gill falsely accused him of ethical violations, intimidation, and physical

---

[1] The Court accepts as true the facts alleged in the amended complaint for purposes of ruling on the pending motion to dismiss.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").  The Court is not required to accept as true any legal conclusions couched as factual allegations.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

assault. The ongoing feud between Gill and Plaintiff culminated in Plaintiff's banishment from the Club in early 2024.

Undeterred by the ban, Plaintiff attempted to attend a Club event at the Magnolia Building on March 14, 2024. However, Gill informed City law enforcement officers of Plaintiff's presence, and a police officer issued a trespass citation to Plaintiff. On March 18, 2024, Plaintiff gave a presentation at a City Commission meeting imploring City leadership "to not restrict his freedom of expression." According to Plaintiff, the City informed him that his dispute with the Club was essentially a private Club matter unrelated to the City and that no action would be taken.

Plaintiff has – literally – chosen to "make a federal case out of this." He initially filed a complaint on January 21, 2025, which was amended on March 11, 2025. (Docs. 1; 18). The 40-count amended complaint attempts to state claims against the City for First Amendment violation, First Amendment retaliation, and a declaratory judgment (Counts I-III). Plaintiff also brings claims against Gill for conspiracy to commit and aiding and abetting a First Amendment violation and retaliation, IIED, libel, and slander (Counts IV-X). The remaining claims for conspiracy to commit and aiding and abetting a First Amendment violation and retaliation, conspiracy to commit and aiding and abetting IIED, and conspiracy to commit and aiding and abetting libel and slander are brought against Royer (Counts XI-XX), Beck (Counts XI-XXX), and Volpe (Counts XXXI-XL). Defendants seek dismissal of all counts. *See* (Docs. 25; 26; 28).

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995). Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. 2009) (Lazzara, J.).

## Analysis

Given the volume of counts brought by Plaintiff and the fact that federal jurisdiction hinges on his First Amendment claims, the present Order considers only whether Plaintiff has sufficiently alleged a federal claim against any of the Defendants.

### *State Action*

All claims under 42 U.S.C. § 1983 require a showing that (1) a plaintiff was deprived of a right under the Constitution of the United States; and (2) that such a deprivation occurred via state action or action under color of state law. *Willis v. Univ. Health Servs., Inc.*, 993 F.2d 837, 840 (11th Cir. 1993); *see West v. Atkins*, 487 U.S. 42, 48 (1988). Accordingly, "state action is a prerequisite to triggering constitutional protections." *Gonzales v. FedEx Ground Package Sys., Inc*, No. 12-CV-80125, 2013 WL 12080223 (S.D. Fla. Aug. 1, 2013) (citing *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003)). The Eleventh Circuit has identified three tests to determine the existence of state action by private actors: (1) the public function test; (2) the state compulsion test; and (3) the nexus/joint action test. *See National Broadcasting Co., Inc. v. Communications Workers of America, AFL–CIO*, 860 F.2d 1022, 1026 (11th Cir. 1988).

> The public function test limits state action to instances where private actors are performing functions "traditionally the exclusive prerogative of the state." The state compulsion test limits state action to instances where the government "has coerced or at least significantly encouraged the action alleged to violate the Constitution." The nexus/joint action test applies where "the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise."

*Willis*, 993 F.2d at 840 (internal citations omitted) (quoting *NBC*, 860 F.2d at 1026-27).

In this case, Plaintiff alleges that he was deprived of his constitutional right to engage in "protected speech" at the Club – a private entity.  First, as to the public function test, the Court finds that the operation of a private dance club is not an exclusive function of the government and therefore cannot satisfy the public function test.  *See White v. Scrivner Corp.*, 594 F.2d 140, 142 (5th Cir. 1979) (explaining that the public function test "embraces very few activities" and holding that even detention and search are not exclusively reserved to states).

Second, under the compulsion test, Plaintiff fails to show that the government compelled or coerced the Club to do anything – in fact, his allegations appear to establish that the Club was the entity that did everything.  He also does not allege that the government prohibited certain speech in either City Commission meetings or Club meetings, or that the government had any hand in Club elections.  Though Plaintiff alleges in conclusory fashion that the City "sponsors" the Club and maintains "municipal oversight" over it, he fails to explain or assert any facts that would demonstrate how the City asserts any control over the Club or its affairs.  *See Ashcroft,* 556 U.S. 662 at 681 ("[T]he conclusory nature of respondent's allegations . . . disentitles them to the presumption of truth.").

Finally, as to the joint action test, Plaintiff fails to allege any facts to show that the alleged relationship between the private entity and the government (1) directly involves the alleged constitutional violation; and (2) intertwines the

government with the private entity to such a degree of interdependence that it is functionally a joint participant in the action. *Patrick v. Floyd Med. Center*, 201 F.3d 1313, 1315 (11th Cir. 2000) (citing *NBC*, 860 F.2d at 1027).

The Court notes that the only relationship between the City and the Club appears to be that the City is the owner of the property used by the Club for its meetings and dances. But the Eleventh Circuit has held that a private entity's mere leasing of government property cannot establish a sufficient nexus for state action. *See Willis*, 993 F.2d at 841 (holding that a lease between a private health services corporation and a public hospital authority did not constitute state action under nexus/joint action test).

### *First Amendment Claims – City of Lakeland*

Notwithstanding Plaintiff's overarching problem in alleging state action, his specific First Amendment claims against the City also fail. The crux of Plaintiff's First Amendment violation claim against the City is that it "empowered" Club officers and City law enforcement to curtail Plaintiff's "protected expression," and that the City "implemented a policy, custom, or practice" of indifference to the Club's suppression of his purportedly protected speech. Plaintiff's First Amendment retaliation claim against the City largely mirrors these allegations but adds that the "City of Lakeland's officers, agents, and employees took retaliatory actions against Plaintiff in response to his protected expressions" and "such actions would dissuade a person from continuing to engage in protected activities." In its motion to dismiss, the City argues these claims are barred because Plaintiff's allegations

fail to establish municipal liability under *Monell v. Department of Social Services*,
436 U.S. 658, 98 (1978).

Under *Monell*, "[l]ocal governing bodies . . . can be sued directly under
§ 1983 for monetary, declaratory, or injunctive relief . . . pursuant to a
governmental 'custom' even though such a custom has not received formal approval
through the body's official decisionmaking channels."  436 U.S. at 690-91.
Municipalities can only be held liable, however, where "action pursuant to official
municipal policy of some nature caused a constitutional tort;" a city cannot be liable
under § 1983 on a respondeat superior theory because it employs a tortfeasor.  *Id.* at
691.

Consequently, "to impose § 1983 liability on a local government body, a
plaintiff must show: (1) that his constitutional rights were violated; (2) that the
entity had a custom or policy that constituted deliberate indifference to that
constitutional right; and (3) that the policy or custom caused the violation."  *Scott v.
Miami-Dade Cnty.*, No. 13-CIV-23013-GAYLES, 2016 WL 9446132, at *3 (S.D. Fla.
Dec. 13, 2016).  "A plaintiff seeking to impose Section 1983 liability on a
municipality for the actions of a police officer must identify an official policy or
custom constituting the 'moving force' behind the constitutional violation."  *Artuble
v. Colonial Bank Grp., Inc.*, No. 8:08-cv-179-T-23-MAP, 2008 WL 3411785, at *8
(M.D. Fla. Aug. 8, 2008) (citing *Monell*, 436 U.S. at 694; *Gold v. City of Miami*, 151
F.3d 1346, 1350 (11th Cir. 1998)).

To demonstrate a policy or custom, "it is generally necessary to show a persistent and wide-spread practice; random acts or isolated incidents are insufficient." *Scott*, 2016 WL 9446132 at \*4. The requisite causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation omitted). The causal connection may also be established "when a supervisor's custom or policy results in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew the subordinates would act unlawfully and failed to stop them from doing so." *Id.* (internal quotation and citation omitted).

Here, Plaintiff argues that the enforcement of trespass laws against him constitutes a policy or custom of indifference to the suppression of his protected speech. However, for purposes of *Monell* liability, a "policy" of enforcing state law "simply cannot be sufficient to ground liability against a municipality." *Surplus Store & Exch., Inc. v. City of Delphi*, 928 F.2d 788, 791-92 (7th Cir. 1991) ("It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the 'policy' of enforcing state law.").

Concerning Plaintiff's allegations of inaction by the City Commission after he complained to them about the Club, Plaintiff's claims likewise fail. To the extent the Commission has a "policy" of not interjecting itself into private club affairs, it is

certainly not one that constitutes deliberate indifference to a constitutional right.

Nor can it be said that the City Commission "caused" the violation, since it

explicitly abstained from becoming involved in the Club's affairs – which Plaintiff

readily concedes.  After all, the underlying feud is between Plaintiff and Club

officers, not the City.  Finally, even if there were a constitutional violation here,

Plaintiff fails to satisfy the *Monell* standard, which requires that the violation be

part of some persistent or widespread practice.  *See Depew v. City of St. Marys, Ga.*,

787 F.2d 1496, 1499 (11th Cir. 1986).  At most, Plaintiff points to his own isolated

incident and does not identify any other similar incidents.

Accordingly, the Court dismisses Counts I, II and III without prejudice.  In

an abundance of caution, the Court will grant leave to amend, *if Plaintiff may do so*

*in good faith.*

### *First Amendment Claims – Individual Defendants*

Plaintiff also brings a number First Amendment claims against Gill, Royer,

Beck, and Volpe.  Specifically, Plaintiff claims that they conspired to and/or aided

and abetted the City's alleged suppression of his protected speech.  The individual

Defendants have moved to dismiss these claims for failure to state a claim.

As an initial matter, "[i]t is axiomatic that the First Amendment protects the

rights to speak, publish, and assemble against abridgement only by the

government." *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 419 (S.D.N.Y. 2013).

Indeed, "[t]he text and original meaning of [the First Amendment], as well as this

Court's longstanding precedents, establish that the Free Speech Clause prohibits

only *governmental* abridgment of speech. The Free Speech Clause does not prohibit *private* abridgment of speech." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 808 (2019) (emphasis in original).

Perhaps recognizing that First Amendment claims cannot be brought against private individuals, Plaintiff appears to argue Gill, Royer, Beck, and Volpe conspired or worked together with the City to violate his civil rights, which is effectively a 42 U.S.C. § 1985(3) (Ku Klux Klan Act) claim. To demonstrate liability under § 1985(3), a plaintiff must show that a defendant has "conspired against [him] 'for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" *Dean v. Warren*, 12 F.4th 1248, 1266 (11th Cir. 2021) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)). The Supreme Court has indicated that a plaintiff must allege, among other things, "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the defendant's action taken in furtherance of the conspiracy." *See id.* (citing *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 267-68 (1993)).

Here, Plaintiff fails to establish a § 1985(3) claim. First, he alleges no facts supporting an agreement among Defendants to deprive Plaintiff of his constitutional rights – a key requirement for making out a conspiracy claim. *See Bankers Life Ins. Co. v. Credit Suisse First Boston Corp.*, 590 F. Supp.2d 1364, 1368 (M.D. Fla. 2008). While Plaintiff responds that the agreement was "tacitly" made and can be proven through circumstantial evidence, he does not factually identify

any actions by Defendants which tend to show anyone acted in concert for the purpose of depriving him of "equal protection of the laws."  In any event, Plaintiff fails to make allegations of racial or class-based animus or discrimination.  He does not even provide identifying information for himself or any of the individual Defendants.  As a result, Counts IV, V, VI, VII, XI, XII, XIII, XIV, XXI, XXII, XXIII, XXIV, XXXI, XXXII, XXXIII, and XXXIV are dismissed without prejudice, with leave to amend *if Plaintiff may do so in good faith.*

### Conclusion

The Court reminds the parties that this Order is limited to the federal claims that Plaintiff has attempted to bring against Defendants.  It by no means accepts his other claims which, upon initial review, appear to be fraught with their own issues.  For example, to the extent that Plaintiff's intentional infliction of emotional distress claims are premised on Gill telling him to "shut up" or referring to him as a bully, these allegations would appear to fall well short of the standard of conduct required to bring an emotional distress claim.  *See Crespo v. Midland Credit Mgmt., Inc.*, No. 15-60843-CIV, 2015 WL 13779200, at *3.  Should Plaintiff file an amended complaint, Defendants may raise challenges to those claims.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. Defendants' motions to dismiss (Docs. 25; 26; 28) are hereby **GRANTED IN PART.**  The motions are granted to the extent that the amended

complaint is dismissed without prejudice as set forth herein, with leave to amend.

2. Plaintiff Gary West is **DIRECTED** to file a second amended complaint on or before August 18, 2025. Failure to file a second amended complaint will result in this Order becoming a final judgment.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 29th day of July, 2025.

TOM BARBER
UNITED STATES DISTRICT JUDGE